SYRACUSE UNIVERSITY, Appellant, v GAMES 2002, LLC, Respondent. [897 NYS2d 343]—

Appeal from an order of the Supreme Court, Onondaga County (James P. Murphy, J.), entered September 5, 2008 in an action for contractual and common-law indemnification. The order, insofar as appealed from, denied that part of the motion of plaintiff for summary judgment on the first cause of action, for contractual indemnification, and granted the cross motion of defendant to the extent that it sought leave to amend its answer.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Supreme Court properly denied plaintiff's motion for summary judgment on the complaint, which asserts causes of action for contractual and common-law indemnification and seeks judgment in the amount of $750,000 plus interest and costs, based on plaintiff's settlement of an underlying Labor Law and common-law negligence action commenced against, inter alia, the parties herein (*Aton v Syracuse Univ.*, 24 AD3d 1315 [2005]). The plaintiff in the underlying action was an employee who fell from a tower while installing a "lighting/roof grid system" in the Carrier Dome for the 2002 Empire State Games. Plaintiff and defendant had entered into a contract pursuant to which plaintiff agreed to allow defendant to use the Carrier Dome for the opening ceremonies of the games, and the contract provided that defendant would indemnify plaintiff for any liability arising out of defendant's use of the Carrier Dome. We conclude on the record before us that plaintiff failed to establish its entitlement to either common-law or contractual indemnification. Plaintiff failed to establish as a matter of law that it was not itself negligent and that any liability on its part for the injuries sustained by the plaintiff in the underlying action, who was an employee of a subcontractor of defendant, was vicarious only, inasmuch as plaintiff failed to establish that it exercised no supervision or control over the work of the injured employee (*see e.g. State of New York v Santaro Indus., Inc.*, 48 AD3d 1101, 1102-1103 [2008]; *Baillie Lbr. Co., L.P. v A.L. Burke, Inc.*, 43 AD3d 1290 [2007]; *Brickel v Buffalo Mun. Hous. Auth.*, 280 AD2d 985 [2001]). Even assuming, arguendo, that plaintiff met its initial burden on the motion, we would conclude that plaintiff's mo-

tion is premature because discovery has not been completed, including depositions concerning the respective roles, if any, of the parties involved in the accident (*see* CPLR 3212 [f]; *see generally JCS Controls, Inc. v Stacey*, 57 AD3d 1372, 1374 [2008]).

We further conclude that the court properly granted the cross motion of defendant to the extent that it sought leave to amend its answer (*see generally* CPLR 3025 [b]; *Edenwald Contr. Co. v City of New York*, 60 NY2d 957, 959 [1983]). Here, the proposed amendments are not patently lacking in merit (*see generally Carro v Lyons Falls Pulp & Paper, Inc.*, 56 AD3d 1276, 1277 [2008]), and there has been no showing of prejudice to plaintiff (*see generally Torvec, Inc. v CXO on the GO of Del., LLC*, 38 AD3d 1175, 1176-1177 [2007]).

All concur except Carni, J., who dissents and votes to reverse the order insofar as appealed from in accordance with the following memorandum.

Carni, J. (dissenting). I respectfully dissent, because in my view plaintiff established as a matter of law that it was not negligent, that it did not control the injury producing work, and that its liability to the injured employee was vicarious only. I therefore conclude that plaintiff is entitled to contractual indemnification from defendant, Games 2002, LLC (Games 2002), and would reverse the order insofar as appealed from.

In 2002 plaintiff entered into a written agreement with the Games 2002 concerning the use of the Carrier Dome and other facilities on plaintiff's campus. The agreement contained a provision providing for the "indemnification of plaintiff by the Games 2002 for any injury . . . caused by the negligent . . . act or omission of the [Games 2002] or [its] contractors, officers, servants, agents, or employees." The Games 2002 in turn entered into an agreement with National Audio, Inc. (National Audio) to install a "lighting/roof grid system" in conjunction with the event. Thomas Aton, an employee of National Audio, was injured when he fell during the erection of an aluminum tower in the Carrier Dome designed to support overhead lighting for the event. Following the issuance of our decision in *Aton v Syracuse Univ.* (24 AD3d 1315 [2005]), in which we modified the order on appeal by granting the motion of Aton for partial summary judgment on liability on his Labor Law § 240 (1) cause of action, plaintiff settled that action and now seeks summary judgment on its cause of action against the Games 2002 for contractual indemnification under the agreement.

The majority concludes that plaintiff failed to establish that it "was not itself negligent and that any liability on its part for the injuries sustained by [Aton] . . . was vicarious only,

inasmuch as plaintiff failed to establish that it exercised no supervision or control over the work of" Aton, the injured employee. I submit that the analysis of this case should be more sharply focused. Additionally, the majority fails to identify what theory of negligence or factual issue plaintiff failed to eliminate in order to establish its entitlement to summary judgment.

It is well settled that, in order to establish its entitlement to contractual indemnification, a party must establish that it was not itself negligent and that any liability on its part for the injuries sustained by a subcontractor's employee was vicarious only (*see* General Obligations Law § 5-322.1; *State of New York v Santaro Indus., Inc.*, 48 AD3d 1101, 1102-1103 [2008]). In attempting to establish that it was not negligent in conjunction with its request for indemnification, plaintiff in my view was required to establish that it did not control or supervise the *injury producing work* rather than, in a broader sense, the "work of the injured employee." In *Sikorski v Springbrook Fire Dist. of Town of Elma* (225 AD2d 1041 [1996]), we held that "[a] vicariously liable party may obtain common-law [and contractual] indemnification from a contractor where the party did not control, direct, or supervise the *injury-producing work*" (emphasis added). The focus on the "injury producing work" is uniformly applied by all of the Appellate Divisions in the indemnification analysis (*see Torres v LPE Land Dev. & Constr., Inc.*, 54 AD3d 668, 669-670 [2d Dept 2008]; *Colozzo v National Ctr. Found., Inc.*, 30 AD3d 251, 252 [1st Dept 2006]; *Colyer v K Mart Corp.*, 273 AD2d 809, 810 [4th Dept 2000]; *Doyne v Barry, Bette & Led Duke*, 246 AD2d 756, 758-760 [3d Dept 1998]).

In the underlying Labor Law and common-law negligence action arising out of Aton's fall, we wrote that "[t]he record establishes . . . that the accident occurred after [Aton] had been informed that he could climb the tower" (*Aton,* 24 AD3d at 1316). The record before us similarly establishes Aton had been informed that it was "okay" to climb the tower, and the person who gave Aton that information was Amir Efrati, also an employee of National Audio. The record also establishes that Efrati was the only person responsible for securing the bolts required as part of and during the tower assembly. There is no factual dispute that Efrati did not properly secure and tighten the bolts, which caused the instability of the tower and resulted in Aton's fall. While the record indicates that plaintiff's students may have been assisting National Audio employees by holding ropes in order to stabilize the tower, it also unequivocally establishes that Efrati instructed all of the rope holders to "let go of the ropes" because he made the decision that the tower was properly bolted and thus was safe for Aton to climb.

Therefore, in my view, plaintiff met its burden of demonstrating that it did not control or supervise the injury producing work, i.e., the placement and tightening of the bolts, the direction to Aton to climb the tower, and the instruction and ensuing decision to let go of the ropes. To the extent that the majority in reaching its determination relies upon the fact that plaintiff had a representative present who generally supervised students who were working at the Carrier Dome, I conclude that the majority's reliance thereon is misplaced. The Games 2002 failed to raise an issue of fact with respect to how plaintiff exercised any supervision or control over the injury producing work or— even in the broader sense—over Aton's work. Indeed, Efrati testified at his deposition that, after Aton's fall, National Audio revised its procedure with respect to the use of ropes. In my view, that subsequent remedial measure unequivocally establishes National Audio's control over the use of ropes during the tower assembly (*see Hyman v Aurora Contrs.*, 294 AD2d 229 [2002]).

Finally, I note that the majority relies on *JCS Controls, Inc. v Stacey* (57 AD3d 1372, 1374 [2008]) for its conclusion that plaintiff's motion was premature because discovery has not been completed. That case is distinguishable, however, because it involved a motion by plaintiff to obtain discovery and a cross motion by defendant for partial summary judgment dismissing two causes of action. Here, the Games 2002 made no attempt to demonstrate that "facts essential to justify opposition may exist but cannot then be stated" (CPLR 3212 [f]; *cf. Sweeney Steel Serv. Corp. v Fidelity & Deposit Co. of Md.*, 6 AD3d 1075, 1076 [2004]). The Games 2002 did not identify any outstanding discovery demands it had served or any particular discovery device that would potentially lead to facts essential to its opposition of plaintiff's motion. Indeed, the Games 2002 itself crossmoved for summary judgment on the issue of contractual indemnification and relied upon the same record as plaintiff, which includes extensive deposition testimony from the underlying action.

I therefore would reverse the order insofar as appealed from, grant that part of plaintiff's motion for summary judgment on the first cause of action, for contractual indemnification, and deny the cross motion of the Games 2002 to the extent it sought leave to amend its answer, thereby denying the cross motion in its entirety. I further would order that judgment be entered in favor of plaintiff and against the Games 2002 in the amount of $750,000, plus interest at the rate of 9% per annum commencing August 2, 2006 and costs. Present—Scudder, P.J., Centra, Fahey, Carni and Pine, JJ.